Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CYGNUS CORPORATE SERVICES DBA MASTER KEY CAPITAL,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff" and/or "Plaintiffs") makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

- 1 -
Complaint

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant CYGNUS CORPORATE SERVICES dba MASTER KEY CAPITAL is, and at all times herein mentioned was, a California Corporation, headquartered in the State of California, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "CYGNUS").

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such TCPA civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5. Plaintiffs bring this action against Defendant for injunctive relief and damages and all other relief available at law and in equity.

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. CYGNUS is engaged in a scheme to sell mortgage services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, CYGNUS is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, CYGNUS either directly or using an agent acting at the direction of CYGNUS calls various numbers in the United States to sell CYGNUS's services without regard to whether those numbers are on the Do Not Call Registry or not.

10. CYGNUS and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. CYGNUS has intentionally violated the TCPA in a so-far successful attempt to sell mortgage services for years.

## FACTUAL DETAILS RE NAMED PLAINTIFF

13. Defendants made seven (7) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their mortgage services on the following dates and times and using the following Caller ID ("CID") numbers:
- 01/24/2020, 10:39 am, CID 669-208-7552. Answered
- 01/24/2020, 10:57 am, CID 424-277-9187. Answered
- 01/24/2020, 11:49 am, CID 949-678-9112. Answered
- 01/30/2020, 4:28 pm, CID 573-302-9990. Answered
- 02/26/2020, 5:40 pm, CID 949-678-9212. Missed
- 02/26/2020, 7:08 pm, CID 949-678-9212. Missed
- 03/02/2020, 4:45 pm, CID 949-678-9212. Missed

14. Mr. Sapan made a log of all the calls he received from CYGNUS during or shortly after receiving the calls which includes the date and time of the call as well as brief notes about what happened during the calls.

15. This call log is attached to this Complaint as Exhibit 1, and is incorporated herewith.

16. The all calls illegally blocked transmitting Caller ID Name information. *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

17. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company more than ten (10) years ago.

18. Mr. Sapan registered his residential line on the National "Do-Not-Call" Registry on December 22, 2007 and Mr. Sapan has kept his residential line on the Registry from that time to the present.

19. Mr. Sapan never gave CYGNUS or any other person, agent, employee or entity associated with CYGNUS express written permission to call him, nor does he have an established business relationship nor personal relationship with CYGNUS or any other person, agent, employee or entity associated with CYGNUS.

20. The first call on January 24, 2020 from the CID 669-208-7552 was answered by Mr. Sapan.

21. During this call Mr. Sapan spoke to a "Victor" who asked about interest in mortgage refinancing and who after speaking with Mr. Sapan then attempted to connected Mr. Sapan to another seller, but was unsuccessful.

22. "Victor" then told Mr. Sapan that a "Doug" from "Master Key Capital" would call Mr. Sapan back, to which Mr. Sapan expressly stated that he did not consent to a return call and hung up.

23. The second call on January 24, 2020 from the CID 424-277-9187 was answered by Mr. Sapan, and it was "Doug" from "Master Key Capital" calling Mr. Sapan back in direct violation of Mr. Sapan's statement that Mr. Sapan did not consent to a return call.

24. Mr. Sapan then told "Doug" to place Mr. Sapan on their internal Do-Not-Call list.

25. The third call on January 24, 2020 from the CID 949-678-9212 was answered by Mr. Sapan, and it was "Kyle" who stated he was with Master Key

- 4 -
Complaint

Capital, again calling in violation of Mr. Sapan's request to be placed on their internal Do-Not-Call list, and Mr. Sapan just hung up the phone.

26. The fourth call on January 30, 2020 from the CID 573-302-9990 was answered by Mr. Sapan, to which he spoke with a "Mike" who then transferred Mr. Sapan to a "Kyle" from "Master Key Capital" but the call was dropped before Mr. Sapan could once again state he wanted to be on their internal Do-Not-Call list.

27. Plaintiff than received three (3) more calls from CID 949-678-9212 as noted above, which Mr. Sapan did not answer as he knew that number belonged to "Kyle" from "Master Key Capital".

28. Upon researching who "Master Key Capital" was, Plaintiff discovered that "Master Key Capital" was a listed trade name from CYGUNUS.

29. Plaintiff pleads on information and belief that the CID numbers, 949-678-9212, 573-302-9990, 424-277-9187 and 669-208-7552 all belong directly to CYGNUS and that CYGNUS directly made the calls associated with these CID.

30. Plaintiff pleads on information and belief that the CID numbers, 949-678-9212, 573-302-9990, 424-277-9187 and 669-208-7552 all belong directly to an agent or entity hired by CYGNUS and that those entities or persons directly made the calls associated with these CID.

31. The call from "Kyle" had the CID 949-678-9212, so Plaintiff pleads on information and belief that the CID 949-678-9212 belonged directly to CYGNUS and that CYGNUS directly made the calls associated with this CID.

32. The call from "Doug" had the CID 424-277-9187, so Plaintiff pleads on information and belief that the CID 424-277-9187 belonged directly to CYGNUS and that CYGNUS directly made the calls associated with this CID.

33. Plaintiff alleges on information and belief that the calls from CID 573-302-9990 and 669-208-7552 were calls from the agent or entity hired by CYGNUS.

34. Plaintiff alleges on information and belief that the calls from CID 949-678-9212, 573-302-9990, 424-277-9187 and 669-208-7552 were calls made by a person or entity on behalf of CYGNUS to sell CYGNUS's services.

35. Each time Mr. Sapan answered CYGNUS tried to sell mortgage services.

36. Mr. Sapan never agreed to any callbacks nor did he express interest in the mortgage services, and in fact expressly told Defendant to place him on their internal Do-Not-Call list.

37. Plaintiff alleges on information and belief that CYGNUS transmitted the latter calls he did not answer to Mr. Sapan's residential line which was on the federal "Do Not Call" Registry to sell their mortgage services just like they did in the previous calls.

38. All of the calls were made either by CYGNUS directly or "on behalf of" CYGNUS within the meaning of 47 U.S.C. 227(c)(5) because the point of all the calls was to sell CYGNUS's mortgage services.

39. Plaintiff pleads on information and belief that to the extent CYGNUS may have relied on any agent or other entity to begin telemarketing calls on its behalf, CYGNUS had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

40. Alternatively, Plaintiff pleads on information and belief that to the extent CYGNUS may have relied on any agent or other entity to begin telemarketing calls on its behalf, CYGNUS hired that agent to interact with the public on CYGNUS' behalf using CYGNUS' name when they brought the CYGNUS sales person into the illegal call and therefore gave implied authority to represent CYGNUS.

41. Alternatively, Plaintiff pleads on information and belief that CYGNUS ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

42. CYGNUS may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## DIRECT LIABILITY OF CYGNUS

43. As detailed above, Plaintiffs pleads that CID numbers, CID numbers, 949-678-9212, 573-302-9990, 424-277-9187 and 669-208-7552 all belong directly to CYGNUS and that CYGNUS directly made the calls associated with these CIDs.

44. Plaintiff pleads on information and belief that all calls made from CID numbers, 949-678-9212, 573-302-9990, 424-277-9187 and 669-208-7552 were made by direct employees of CYGNUS.

45. Plaintiff was also called directly from "Doug" who Plaintiff believes is a direct employee of CYGNUS, and who called from CID number 424-277-9187 which shows that all calls from CID 424-277-9187 are from a direct employee of CYGNUS.

46. Plaintiff was also called directly from "Kyle" who Plaintiff believes is a direct employee of CYGNUS, and who called from CID number 949-678-9212 which shows that all calls from CID 949-678-9212 are from a direct employee of CYGNUS.

47. Plaintiff pleads on information and belief that "Doug" and "Kyle" and "Victor" and "Mike" who were on the calls were direct employees of CYGNUS.

48. Plaintiff pleads on information and belief that the officers, managers and employees for CYGNUS knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling was cold call junk telemarketing not directed to any specific person and used a technically

sophisticated calling system that could illegally hide Caller ID Name which indicates that this was an intentional and organized corporate sales effort and not a rogue employee or random event.

## AGENT LIABILITY ALLEGATIONS

49. Plaintiff pleads on information and belief that to the extent CYGNUS may have relied on any agent or other entity to make telemarketing calls on its behalf, CYGNUS had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct CYGNUS representatives into the call to attempt to complete the sale.

50. Alternatively, Plaintiff pleads on information and belief that to the extent CYGNUS may have relied on any agent or other entity to make telemarketing calls on its behalf, CYGNUS hired that agent to interact with the public on CYGNUS' behalf and therefore gave implied authority to represent CYGNUS.

51. Alternatively, Plaintiff pleads on information and belief that CYGNUS ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

52. Plaintiff pleads on information and belief that to the extent CYGNUS uses any agents to make calls, CYGNUS has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

53. Plaintiff pleads on information and belief that to the extent CYGNUS uses any agents to make calls, CYGNUS knew or reasonably should have known

that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

54. Plaintiff pleads on information and belief that to the extent CYGNUS uses any agents to make calls, CYGNUS explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

55. Plaintiff pleads on information and belief that to the extent CYGNUS uses any agents to make calls, CYGNUS explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of CYGNUS.

56. Plaintiff pleads on information and belief that "Doug" and "Kyle" and "Victor" and "Mike" who were on the calls are all agents of CYGNUS hired by CYGNUS to conduct telemarketing on CYGNUS's behalf, and that these persons engaged in all conducted alleged to have been conducted by agents of CYGNUS.

## "ON BEHALF OF" LIABILITY ALLEGATIONS

57. Plaintiff pleads that all calls complained of above were made "on behalf of" CYGNUS within the meaning of those words as used in title 47 of the United States Code section 227(c)(5): "A person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

58. Plaintiff contends that "on behalf of" liability is a broader standard than traditional agency liability.

59. Plaintiff pleads on information and belief that CYGNUS hired, retained, instructed or allowed any entity or person who made the alleged calls to

Complaint

makes those calls on behalf of CYGNUS in order to sell CYGNUS's financial products.

60. Additionally, any call which was transferred to an employee of CYGNUS was made on behalf of CYGNUS to sell their services.

61. Plaintiff pleads on information and belief "Doug" and "Kyle" and "Victor" and "Mike" who were on the calls are all agents of CYGNUS hired by CYGNUS to conduct telemarketing on CYGNUS's behalf, and that these persons engaged in all conducted alleged to have been conducted by agents of CYGNUS.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

62. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

63. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

64. Plaintiff has been harmed by these calls by the intrusion upon his privacy by callers who had no legal right to call his residential number.

65. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

66. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having

to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

67. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

68. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

69. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

70. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff)

71. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

72. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

73. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

74. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

75. Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

76. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: October 19, 2023                    **PRATO & REICHMAN, APC**

/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,